IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** | CHAPTER 7 |
| **BRONWYN A. HANAWAY** | CASE NO. 25-05287-KBH |
| **Debtor** | |

**OBJECTION OF CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE AND APPELLEE, TO MOTION FOR STAY OF SEPTEMBER 3, 2025 ORDER DENYING MOTION TO CONVERT CASE TO CHAPTER 13**

Christine C. Shubert, Chapter 7 Trustee (the "Trustee" and "Appellee") for the estate of Bronwyn A. Hanaway (the "Debtor"), by and through her counsel, Karalis PC, hereby objects (the "Objection") to the Debtor's Motion for Stay of September 3, 2025[1] Order Denying Motion to Convert Case to Chapter 13 (the "Stay Motion"), and in support thereof, respectfully states as follows:

## BACKGROUND

**A. Procedural Background.**

1. On April 23, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").

2. On April 30, 2025, the Trustee was appointed which appointment remains in effect.

**B. The Residential Real Property Owned by the Debtor's Bankruptcy Estate.**

3. The Debtor's bankruptcy estate owns residential real property located at 802 West Bridge Street, Parkesburg, PA 19365 (the "Real Property").

4. The Debtor's original Schedule A/B: Property filed on May 26, 2025 indicated that

---

[1] The Order at issue is actually dated September 4, 2025, not September 3, 2025.

the Real Property had a fair market value of $182,162.00.

C.   **The Debtor's Original Income and Expenses.**

5.   The Debtor's original Schedule I: Your Income and Schedule J: Your Expenses filed on May 26, 2025, while not computed correctly, reflect that the Debtor had *negative* $287.61 in monthly net income.

D.   **The Meeting of Creditors.**

6.   The 11 U.S.C. § 341(a) meeting of creditors (the "§ 341(a) Meeting") was originally scheduled to be held on May 28, 2025.

7.   That being said, none of the requested documents were provided to the Trustee in advance of the first § 341(a) Meeting.

8.   As such, the § 341(a) Meeting was continued to June 4, 2025.

9.   Neither the Debtor nor her counsel appeared at the continued § 341(a) Meeting on June 4, 2025.

10.  Instead, the Debtor's counsel advised the Trustee that the Debtor intended to convert to Chapter 13.

11.  As such, the § 341(a) Meeting was continued to July 3, 2025.

12.  The Debtor advised the Trustee that she could not attend the § 341(a) Meeting on July 3, 2025 due to family medical reasons.

13.  As such, the § 341(a) Meeting was continued to August 27, 2025.

14.  The Debtor advised the Trustee that she could not attend the § 341(a) Meeting on August 27, 2025 due to medical reasons.

15.  As such, the § 341(a) Meeting was continued to September 12, 2025.

16.  After trying to get out of the § 341(a) Meeting again by contacting the Office of the

United States Trustee, the Debtor finally attended the § 341(a) Meeting on September 12, 2025.

17.     The § 341(a) Meeting was held on September 12, 2025 but continued to October 1, 2025 for the Debtor to provide documents and amend her Bankruptcy Schedules.

**E.      The Motion to Convert filed by the Debtor.**

18.     On June 4, 2025, the Debtor filed the Motion for Order Converting Chapter 7 Case to Case Under Chapter 13 (the "Conversion Motion").

19.     The Trustee was aware of potential equity in the Real Property prior to the filing of the Conversion Motion.

20.     The Conversion Motion states, *inter alia*, as follows:

- Debtor filed this Chapter 7 case on April 23, 2025.

- Debtor filed the schedules and other documents required.

- A Chapter 13 is in Debtor's best interest.

- Debtor satisfies the requirements to be a Debtor under Chapter 13.

- This case has not previously been converted.

- Movant does consent to the entry of a final order or judgment by the court if it is determined that the court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

21.     The Debtor did not indicate anywhere in the Conversion Motion that her Bankruptcy Schedules were woefully incorrect or that there was potential equity in the Real Property.

**F.      The Objection to the Conversion Motion filed by the Trustee.**

22.     On June 12, 2025, the Trustee filed an Objection to the Conversion Motion (the "Conversion Motion Objection").

23.     As set forth in the Conversion Motion Objection, the Trustee argued that the

Conversion Motion must be denied because (i) the Debtor was not moving to convert in good faith, (ii) the Debtor could not propose a confirmable chapter 13 plan, (iii) the impact on the Debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion, (iv) the effect of conversion on the efficient administration of the bankruptcy estate and (v) conversion would further an abuse of the bankruptcy process.

**G.    The Debtor's Amendments to her Bankruptcy Schedules.**

24.    After the Conversion Motion Objection was filed, on June 18, 2025, the Debtor filed an Amended Schedule A/B: Property indicating that the Real Property now had a fair market value of $361,600.00.[2]

25.    As such, according to the Debtor, the Real Property had a fair market value of more than $179,000.00 than what was initially disclosed.

26.    After the Conversion Motion Objection was filed, on June 18, 2025, the Debtor filed an Amended Schedule I: Your Income and Amended Schedule J: Your Expenses reflecting that the Debtor now had *positive* $244.00 in monthly net income.

27.    On September 2, 2025, the Debtor filed a Second Amended Schedule J: Your Expenses reflecting that the Debtor now had *positive* $344.32 in monthly net income.

28.    As such, the Debtor's monthly net income went from an original *negative* $287.61 in monthly net income to a *positive* $344.32 in monthly net income.

**H.    The Secured Debt Encumbering the Real Property.**

29.    The Debtor's Schedule D: Creditors Who Have Claims Secured by Property filed on May 26, 2025 and Amended Schedule D: Creditors Who Have Claims Secured by Property filed on July 17, 2025 both reflect that there are two (2) mortgages encumbering the Real Property

---

[2] The Debtor filed a Second Amended Schedule A/B: Property on July 17, 2025 and a Third Amended Schedule AB: Property on September 13, 2025 but the fair market value of the Real Property was not changed.

4

in the aggregate amount of $162,659.50.

30. That being said, the two (2) creditors who hold the mortgages filed proofs of claim at Claim Nos. 1 and 4 reflecting an aggregate mortgage balance of $116,757.77.

**I.  The Hearing on the Conversion Motion.**

31. The hearing on the Conversion Motion was held on September 3, 2025.

32. At the hearing on the Conversion Motion, the Debtor presented no evidence whatsoever.

33. On September 4, 2025, this Court entered an Order denying the Conversion Motion (the "9/4/25 Order").

**J.  Appeal of the 9/4/2025 Order and the Stay Motion filed in the Bankruptcy Court.**

34. On September 11, 2025, the Debtor filed a Notice of Appeal in connection to the 9/4/2025 Order (the "Appeal").

35. On September 12, 2025, the Appeal was docketed.

36. On September 22, 2025, the Debtor filed a Motion to Stay Pending Appeal in the Bankruptcy Court.

37. On October 30, 2025, the Bankruptcy Court denied the Motion.

**OBJECTION**

**I.  The Applicable Legal Standards for a Stay Pending Appeal.**

38. As an initial matter, nowhere in the Stay Motion does the Debtor state the applicable legal standard for a stay pending an appeal.

39. The decision to grant a stay pending appeal is within the discretion of the District Court. *See, Cost Bros. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).

40. A party seeking such a stay must demonstrate that (1) it has a substantial likelihood

of success on the merits of its appeal; (2) it will suffer irreparable injury absent a stay; (3) a stay will not substantially injure the other parties interested in the proceeding; and (4) a stay will not harm the public interest. *See, Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991); *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

41.     To determine whether a stay pending appeal is warranted, the Court balances each of the factors and considers their relative strength. *See, Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011)).

42.     Although a court considers all four (4) factors, the United States Supreme Court has observed that the "most critical" factors are the first two: "whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *See, Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)).

43.     Once a movant satisfies the first two (2) factors, the traditional stay inquiry calls for an assessment of the remaining factors—i.e., the "harm to the opposing party and [the weight of] the public interest." *See, Nken*, 556 U.S. at 435, 129 S.Ct. 1749.

44.     As described in *Revel*, this "balancing" of the factors is as follows:

> We weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three). This is called the balancing of harms or balancing of equities. We also take into account where the public interest lies (factor four)—in effect, how a stay decision has "consequences beyond the immediate parties." *Roland Mach.*, 749 F.2d at 388.

*See, Revel*, 802 F.3d at 569.

45.     The Third Circuit Court of Appeals in *Revel* summarized the entire stay pending appeal analysis as follows:

> To sum up, all four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win

6

on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we "balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these [first] two factors, the inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *In re Forty–Eight Insulations, Inc.*, 115 F.3d 1294, 1300–01 (7th Cir. 1997) (internal citation omitted). But depending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal.

*See, Revel*, 802 F.3d at 571.

## II. The Debtor's Likelihood of Success on the Merits of the Appeal.

46. The Third Circuit has set forth the standard to determine what constitutes a likelihood of success on appeal as follows:

> For our Court, a sufficient degree of success for a strong showing exists if there is "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). Thus, while it "is not enough that the chance of success on the merits be 'better than negligible,' " *Nken*, 556 U.S. at 434, 129 S.Ct. 1749 (citation omitted), the likelihood of winning on appeal need not be "more likely than not," *Singer Mgmt. Consultants*, 650 F.3d at 229 ; *see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir.1977) (noting that the trouble with a "strict 'probability' requirement is it leads to an exaggeratedly refined analysis of the merits at an early stage in the litigation").

*See, Revel*, 802 F.3d at 568–69.

47. Thus, the relevant question is whether the Debtor has a "reasonable" chance or probability of succeeding on the Appeal.

48. The simple answer is that the Debtor has no chance of succeeding on the Appeal.

49. As an initial matter, the Debtor presented no evidence at the hearing on the Conversion Motion. The Third Circuit has held that a debtor bears the burden of establishing good faith. *See, Integrated Telecom Express, Inc.*, 384 F.3d 108, 114 (3d Cir. 2004).

50. In the 9/4/2025 Order, the Bankruptcy Court correctly applied the "totality of the circumstances" test to determine if the Debtor was seeking to convert her case to Chapter 13 in good faith. *See, e.g., In re Lilley*, 91 F.3d 491 (3d Cir. 1996); *In re Piccoli*, 2007 U.S. Dist. LEXIS 72533, at *16-*17 (E.D. Pa. Sept. 27, 2007); *In re Pakuris*, 262 B.R. 330, 335 (Bankr. E.D. Pa. 2001); *In re Porreco*, 333 B.R. 310 (W. D. Pa. 2005)).

51. The Bankruptcy Court also correctly analyzed the following factors to determine if the Debtor was attempting to convert her case in good faith:

  (a) Whether the debtor is seeking to convert to chapter 13 in good faith, including a review of facts such as the timing of the motion to convert, the debtor's motive in filing the motion, and whether the debtor has been forthcoming with the bankruptcy court and creditors;

  (b) Whether the debtor can propose a confirmable chapter 13 plan;

  (c) The impact of denying conversion weighed against the prejudice to creditors caused by allowing conversion;

  (d) The effect of conversion on the efficient administration of the bankruptcy estate; and

  (e) Whether conversion would further an abuse of the bankruptcy process.

*See, Pakuris*, 262 B.R. at 335-36.

52. In conducting its analysis, the Bankruptcy Court properly found that a review of these factors clearly reflected that the Debtor was attempting to convert her case in bad faith.

53. As such, the Debtor clearly has no likelihood to succeed on the Appeal.

**III. <u>Whether the Debtor will suffer Irreparable Injury.</u>**

54. Turning to the second factor of the stay pending appeal analysis, "the applicant must 'demonstrate that irreparable injury is *likely* not merely possible in the absence of a stay.' " *See, Revel*, at 569 (italics in the original) (brackets omitted) (*quoting Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

55. For this standard, "likely" means "more apt to occur than not." *See, Id.* at 569.

56. The Debtor only filed the Conversion Motion, the Appeal, the motion to stay pending appeal in the Bankruptcy Court and the instant Stay Motion after she was caught with potential equity in the Real Property and wants to prevent the Trustee from liquidating the Real Property.

57. The Debtor placed herself in this position by filing for relief under Chapter 7 of the Bankruptcy Code.

58. While there may be prejudice to the Debtor if the Real Property is sold, the Appeal may be decided prior to the Trustee's sale of the Real Property.

59. The Real Property has yet to be listed for sale, the Trustee will have to find a buyer, the Trustee will have to file a motion to sell the Real Property with notice and a hearing and closing will have to occur.

60. As such, the Debtor will likely suffer no harm if a stay pending the Appeal is not granted.

### IV. Whether the Trustee will suffer Harm and the Interests of the Public.

61. Revisiting the standard set forth above, both of the first two (2) factors—reasonable likelihood of success of appeal and likelihood of irreparable injury—are necessary for the granting of a stay pending appeal. *See, Revel,* at 571 ("However, if the movant does not make the requisite showings on either of these [first] two factors, the inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis.") (*quoting In re Forty–Eight Insulations, Inc.,* 115 F.3d at 1300–01).

62. Thus, it is not enough that the Debtor show one or the other, as she must show both.

63. As the Debtor has failed to satisfy either of these first two (2) requirements, no

analysis of the remaining factors is necessary and the Motion must be denied.

64. That being said, the Trustee will analyze the remaining two (2) factors for this Court's convenience.

**(a)** **<u>The Harm to the Trustee if the Stay is Granted.</u>**

65. The Trustee and the Debtor's bankruptcy estate will be harmed if the stay pending the Appeal is granted.

66. The Trustee and the whole creditor body will be greatly prejudiced if the 9/4/2025 Order is stayed.

67. The Real Property constitutes the chief asset of the Debtor's bankruptcy estate.

68. The Trustee's liquidation of the Real Property will result in significant, if not full, recovery to creditors.

69. Granting a stay would greatly delay the Trustee's liquidation of the Real Property and the administration of the Debtor's estate.

70. Any delay in the liquidation of the Real Property would prejudice the Debtor's estate and creditors.

71. As such, this third factor also weighs heavily as to why the stay should be denied.

**(b)** **<u>The Weight of the Public Interest.</u>**

72. Finally, entry of a stay would run counter to the public interest in this case for several reasons including, but not limited to, the effect it would have on the finality and enforceability of Orders of this Court.

73. The public has a strong interest in ensuring the finality and enforceability of court orders.

74. The public interest is served by the efficient resolution of bankruptcy proceedings and litigation. *See, In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) (*citing In re Adelphia Commc'n Corp.*, 361 B.R. 337, 367-68 (S.D.N.Y. 2007)); *Constitution Party of Pa. v. Cortes*, 2016 U.S. Dist. LEXIS 65845, at *5-*6 (E.D. PA. May 18, 2016)

75. In order for the bankruptcy system to work efficiently, litigants in bankruptcy must be able to rely upon the enforcement and enforceability of court orders.

76. The instant Stay Motion is just an attempt by the Debtor to hinder the Trustee's ability to administer this bankruptcy estate in a timely fashion. Accordingly, this factor also weighs heavily in favor of denying the Motion.

## CONCLUSION

77. For the foregoing reasons, the Motion must be denied. All of the elements of the analysis for a stay pending appeal dictate that no stay is warranted in this case because: (i) the Appeal is frivolous; (ii) the Debtor will likely not be harmed; (iii) a stay would significantly harm the Debtor's bankruptcy estate; and (iv) the public interest is best served by assuring that Court Orders are enforced as written.

78. Quite simply, the Debtor has not and cannot meet her burden to show that she is entitled to a stay.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE,** the Trustee respectfully requests the entry of an Order (i) denying the Stay Motion and (ii) granting such other and further relief as this Court deems just and proper.

                                                          **Respectfully submitted,**

                                                         **KARALIS PC**

                                       By:    /s/ Robert W. Seitzer
                                                              ROBERT W. SEITZER
                                                              1900 Spruce Street
                                                              Philadelphia, PA  19103
                                                              (215) 546-4500
                                                              rseitzer@karalislaw.com

                                                              *Attorneys for the Trustee/Appellee*

Dated: December 1, 2025