**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN THE MATTER OF: | CIVIL ACTION<br>NO.  25-5287 |
| HANAWAY | |
| | BANKRUPTCY<br>NO.  25-11563 |

**HODGE, J.**                                                                 **May 14, 2026**

**<u>MEMORANDUM</u>**

**I.      INTRODUCTION**

Before the Court is Debtor-Appellant Bronwyn Hanaway's ("Appellant" or "Ms. Hanaway") appeal from the September 4, 2025 Order of Chief United States Bankruptcy Judge Ashely M. Chan of the United States Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Court Order"), which denied Appellant's Motion to Convert Chapter 7 Case to Chapter 13 under 11 U.S.C. § 706(a) ("Motion to Convert"). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).[1] Having reviewed the briefs and the record on appeal, and

---

[1]      Appellee suggests that the appeal is statutorily moot under 11 U.S.C. § 363(m). (Dist. ECF No. 17 at ¶¶ 9–16.) However, the statute restricts a court's ability to hear appeals from a bankruptcy court's order allowing sale of the debtor's property. *In re Flynn*, 417 F. App'x 188, 190 (3d Cir. 2011) (explaining that "11 U.S.C. § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property if a party failed to obtain a stay *of the sale*" (emphasis added)). In contrast, the trustee's sale of a debtor's real property does not by itself render an appeal of a conversion order moot. *In re Smith*, 757 F. App'x 77, 81 n.5 (3d Cir. 2018). Courts assess appeals of a bankruptcy court's conversion order and sale order separately. *See, e.g.*, *In re Culp*, 545 B.R. 827, 842–44 (D. Del. 2016) (affirming the bankruptcy court's denial of a motion to convert while separately dismissing appeal of the sale order as moot under § 363(m) given sale of the property), *aff'd* 681 F. App'x 140 (3d Cir. 2017). Because Appellant brings this appeal to the Bankruptcy Court's Order on the Motion to Convert (Bankr. ECF No. 57) rather than the Order Authorizing the Sale of the Residential Property (Bankr. ECF No. 112), § 363(m) does not hinder this Court's ability to make a determination on the appeal.

having determined that oral argument is not necessary in this case,[2] this Court affirms the Bankruptcy Court Order for the reasons set forth below.

## II.    BACKGROUND[3]

### A.  Bankruptcy Proceedings Prior to Motion to Convert

On April 23, 2025, Ms. Hanaway filed a Chapter 7 Bankruptcy Voluntary Petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania. (Bankr. ECF No. 1.) On May 26, 2025, Appellant filed several schedules in support of the Chapter 7 filing. "Schedule A/B: Property" reported that Ms. Hanaway owned a single-family home located at 802 West Bridge Street, Parkesburg, Pennsylvania 19365 (the "Real Property"). (Dist. ECF No. 14 at 8; Bankr. ECF No. 19 at 1.) The schedule listed the current value of the entire property as $182,162.00. (Dist. ECF No. 14 at 8; Bankr. ECF No. 19 at 1.) Appellant also filed "Schedule D: Creditors Who Have Claims Secured by Property," which identified two secured claims against the Real Property: a $150,000.00 claim held by Rushmore and a $12,695.50 claim held by Citadel. (Dist. ECF No. 14 at 11; Bankr. ECF No. 19 at 13.) Additionally, Ms. Hanaway filed "Schedule I: Your Income," listing a combined monthly income of $2,444.00, and "Schedule J: Your Expenses," listing monthly expenses of $2,993.00. (Bankr. ECF No. 19 at 27, 30.) As Trustee-Appellee ("Trustee" or "Appellee") notes, there was a computation error in Schedule J. (Dist. ECF No. 14 at 8.) Accounting for this error, the schedule reported a monthly net income of negative $287.61.[4] (*Id.*)

The meeting of creditors pursuant to 11 U.S.C. § 341(a) (the "§ 341(a) Meeting") was initially scheduled for May 28, 2025. (Dist. ECF No. 12 at 5; Dist. ECF No. 14 at 8.) The § 341(a) Meeting was continued to June 4, 2025 to allow time for Ms. Hanaway to provide the Trustee with

---

[2] *See* Fed. R. Bankr. P. 8019(b)(3).
[3] The Court adopts the pagination supplied by the CM/ECF docketing system.
[4] The Court has independently confirmed this calculation.

the required schedules. (Dist. ECF No. 12 at 5; Dist. ECF No. 14 at 8.) On June 4, 2025, Ms. Hanaway's counsel informed the Trustee that she would be filing a motion to convert the case to Chapter 13, and that neither Ms. Hanaway nor her counsel would appear at the § 341(a) Meeting scheduled to take place that day. (Dist. ECF No. 12 at 5; Dist. ECF No. 14 at 8.) The § 341(a) Meeting was continued to July 3, 2025. (Dist. ECF No. 12 at 5; Dist. ECF No. 14 at 8.) Counsel for Ms. Hanaway requested two additional continuances, first due to family medical reasons and later due to medical reasons. (Dist. ECF No. 14 at 9; Bankr. ECF Nos. 39, 50.) The § 341(a) Meeting was eventually held on September 12, 2025, but was continued to October 1, 2025 for Ms. Hanaway to provide documents and amend her Bankruptcy schedules. (Dist. ECF No. 14 at 9; Bankr. ECF No 67.)

### B.  Motion to Convert

On June 4, 2025, Ms. Hanaway filed the Motion to Convert the Chapter 7 case to Chapter 13. (Dist. ECF No. 12 at 6; Dist. ECF No. 14 at 9; Bankr. ECF No. 22 at 1.) In support of the Motion to Convert, Ms. Hanaway averred:

1. Debtor filed this Chapter 7 case on April 23, 2025.
2. Debtor filed the schedules and other documents required.
3. A Chapter 13 is in Debtor's best interest.
4. Debtor satisfies the requirements to be a Debtor under Chapter 13.
5. This case has not previously been converted.
6. Movant does consent to the entry of a final order or judgment by the court if it is determined that the court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

(Bankr. ECF No. 22 at 1.)

On June 12, 2025, the Trustee filed an Objection to the Conversion Motion ("Objection"), arguing that the Motion to Convert should be denied because an assessment of the totality of the circumstances indicated that the Motion to Convert was not filed in good faith. (Bankr. ECF No. 27 at 5–6.) Specifically, the Trustee argued that Ms. Hanaway severely undervalued the fair market

value of the Real Property, did not provide documents requested by the Trustee, failed to attend a § 341(a) Meeting prior to filing the Motion to Convert, and was not forthcoming with the Bankruptcy Court and creditors. (*Id.* at 6.) Furthermore, the Trustee asserted that Ms. Hanaway could not propose a confirmable Chapter 13 plan because she had negative monthly net income; conversion would prejudice creditors because Ms. Hanaway did not have net monthly income to fund a Chapter 13 Plan and had no non-exempt assets other than the Real Property; conversion would significantly delay the administration of Ms. Hanaway's bankruptcy estate to the detriment of creditors and put them at risk of nonpayment; and conversion would further an abuse of the bankruptcy process given Ms. Hanaway's alleged failures and misrepresentations to that point. (*Id.* at 6–7.)

On June 18, 2025, after the Trustee filed the Objection, Ms. Hanaway filed amended versions of Schedules A/B, C, I, and J, as well as employee income records. (*See* Bankr. ECF Nos. 29–33.) The Amended Schedules A/B and C updated the fair market value of the Real Property, increasing the value to $361,600.00—approximately $179,000.00 more than initially disclosed. (Bankr. ECF Nos. 30, 31; Dist. ECF No. 14 at 10.) The Amended Schedules I and J reported that Ms. Hanaway had a higher combined monthly income ($3,537.32 compared to the $2,444.00 that was originally reported) and a positive monthly net income of $244.32 (compared to the negative $287.61 that was originally reported). (Bankr. ECF No. 32 at 2; Bankr. ECF No. 33 at 3.) Ms. Hanaway asserts that she made the income revisions to correct errors in the initial schedules that were based on counsel's misimpression that Ms. Hanaway was paid every two weeks rather than every week. (Dist. ECF No. 12 at 6.)

On August 12, 2025, Ms. Hanaway filed an Opposition to the Trustee's Objection to the Motion to Convert (the "Opposition"). (Bankr. ECF No. 49.) In the Opposition, Ms. Hanaway

asserted that she had an absolute right to convert absent bad faith and that the bad faith exception did not apply. (*Id.* at 2–3.) Ms. Hanaway averred that the case was initially filed under Chapter 7 due to "Debtor's counsel['s] inadvertent use of an outdated valuation of the real estate in the amount of $182,162.00" and "[g]iven the recent valuation information, Debtor has enough non-exempt equity to pay allowed unsecured claims in full." (*Id.* at 2.) Ms. Hanaway further asserted that the Motion to Convert was filed "immediately upon realizing the [Real Property] valuation had not been updated," the Motion to Convert was intended to keep her home while paying arrears on secured debt and paying in full unsecured claims in accordance with a five-year plan, she had been forthcoming with the Bankruptcy Court and creditors, and "errors made by [her] counsel were corrected as soon as discovered." (*Id.*) On September 2, 2025, Ms. Hanaway filed a Chapter 13 plan in support of the Motion to Convert, which proposed a sixty-month plan with a total base amount of $24,900.00 to be paid to the Chapter 13 Trustee. (Dist. ECF No. 12 at 6; Bankr. ECF No. 54 at 1.)

### C.  Hearing on Motion to Convert

On September 3, 2025, the Bankruptcy Court held a hearing on the Motion to Convert. (Bankr. ECF No. 55.) Counsel for Ms. Hanaway appeared telephonically, while counsel for the Trustee appeared in the courtroom. (Bankr. ECF No. 82 at 4:4–10.) Chief U.S. Bankruptcy Court Judge Ashely M. Chan summarized the Motion to Convert and arguments raised in the Trustee's Objection to the motion, and allowed counsel for Ms. Hanaway to respond. (*Id.* at 4:19–5:20.) Appellant's counsel asserted that the factual allegations in the Objection were no longer accurate given the filing of amended bankruptcy schedules. (*Id.* at 5:18–6:3.) Appellant's counsel also emphasized that Appellant's filings initially undervalued the Real Property because counsel had not updated the valuation information herself, but rather relied on information supplied by her

5

client. (*Id.* at 6:4–7:7, 8:22–9:23.) In response, Appellee's counsel asserted that "the [valuation] numbers are unbelievable" and flagged discrepancies between Appellant's initially filed "Schedule D (Creditors Who Have Claims Secured by Property)" and the Bankruptcy Claims Register. (*Id.* at 10:7–22; Bankr. ECF No. 19 at 13–15; *see also* Dist. ECF No. 14 at 11.) The Schedule D listed two mortgages encumbering the Real Property in the aggregate amount of $162,659.50.[5] (Bankr. ECF No. 19 at 13.) Yet two creditors filed proofs of claim, Claim Nos. 1 and 4, on the Bankruptcy Claims Register reflecting an aggregate mortgage balance of only $116,757.77. (Dist. ECF No. 14 at 11; Bankr. Claims Register No. 25-11563.)

Judge Chan concluded that the valuation errors, the failure to attend the § 341(a) Meeting on June 4, 2025, and delay in providing the Trustee with required documents "smack[ed] of bad faith." (*Id.* at 7:25–8:11.) She further determined that it appeared given "the totality of the circumstances that [Ms. Hanaway] was trying to undercut the value of the real property" in her initial filings, which supported a finding of bad faith. (*Id.* at 12:19–25.) Judge Chan then denied the Motion to Convert based upon bad faith. (*Id.* at 13:1–8.) The Bankruptcy Court Order was not accompanied by a memorandum but stated that the motion was denied "for the reasons stated on the record." (Bankr. ECF No. 57.)

## III.  LEGAL STANDARD

District courts have appellate jurisdiction over final judgments, orders, and decrees of a bankruptcy court. *See* 28 U.S.C. § 158(a)(1). This Court reviews the bankruptcy court's findings of fact under a clearly erroneous standard and its conclusions of law under a de novo standard. *In re SubMicron Sys. Corp.*, 432 F.3d 448, 454 (3d Cir. 2006). A trial court's findings of fact are

---

[5]    On July 17, 2025, Ms. Hanaway filed an Amended Schedule D, which listed the same aggregate mortgage balance of $162,659.50. (Bankr. ECF No. 44.)

clearly erroneous when, after reviewing the record, the appellate court is left with the definite and firm conviction that a mistake has been committed. *In re Piccoli*, No. 06-2142, 2007 WL 2822001, at *3 (E.D. Pa. Sept. 27, 2007) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 565 (1985)). A district court may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand for further proceedings. *See* Fed. R. Bankr. P. 8013.

A bankruptcy court's denial of a motion to convert based on a finding of bad faith is reviewed under the abuse of discretion standard. *In re Piccoli*, 2007 WL 2822001, at *4 (citing *In re Myers*, 491 F.3d 120, 125, 127 (3d Cir. 2007)). To assess whether there was an abuse of discretion, the district court must consider the bankruptcy court's findings of fact and law. *See In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999) ("Mindful that an abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact, we review the findings of fact leading to the decision for clear error and exercise plenary review over the court's conclusions of law.") (citation modified). The Third Circuit has explained that the determination of bad faith is a "fact intensive determination better left to the discretion of the bankruptcy court," and reviewing courts accordingly do not "set aside the Bankruptcy Court's factual findings unless they are clearly erroneous." *In re Myers*, 491 F.3d at 125 (quoting *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)).

## IV.    DISCUSSION

Appellant raises two issues on appeal. First, Appellant asserts that the Bankruptcy Court erred as a matter of law by denying the Motion to Convert without analysis or consideration of the Third Circuit's established factors for deciding such a motion. (ECF No. 12 at 8.) Second, Appellant argues that the Bankruptcy Court abused its discretion in not hearing any testimony

from Ms. Hanaway during the hearing on the Motion to Convert in contravention of Federal Rule of Bankruptcy Procedure 9014. (*Id.*)

### A. Bankruptcy Court Analysis of Good Faith

Pursuant to 11 U.S.C. § 706(a), a debtor may convert a bankruptcy case commenced under Chapter 7 to a Chapter 13 proceeding. The right to convert is not absolute; rather, it is conditioned upon the petitioner's ability to qualify as a "debtor" under the chapter to which she seeks to convert. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372 (2007). Importantly, the court may deny the motion to convert if conversion would be in bad faith. *Id.* at 373–74 ("[A] ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13."). While the Bankruptcy Code does not define good faith, courts in the Third Circuit have held that "at the very least, good faith requires a showing of honest intention." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (citation modified). The good faith analysis must be performed in light of "totality of the circumstances" surrounding the motion. *In re Piccoli*, 2007 WL 2822001, at *6 (quoting *In re Lilley*, 91 F.3d at 496).

### 1. Facts Considered by the Bankruptcy Court

Appellant asserts that the Bankruptcy Court did not give Ms. Hanaway "the benefit of the doubt of good faith." (Dist. ECF No. 12 at 11.) Here, the Trustee created a question of bad faith, thus shifting the burden to Appellant to demonstrate good faith. *See In re Tamecki*, 229 F.3d at 207 ("Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove h[er] good faith."). The Trustee's Objection to the Motion to Convert asserted several facts indicating that Ms. Hanaway was not seeking to convert to Chapter 13 in good faith, including

8

the initial undervaluation of the fair market value of the Real Property, the failure to share documents with the Trustee, and the debtor's failure to appear at a § 341(a) Meeting. (Bankr. ECF No. 27 at 6.) The Bankruptcy Court referenced these facts in the context of the good faith analysis before giving Ms. Hanaway the opportunity to respond. (Bankr. ECF No. 82 at 6:10–15, 7:15–8:11.)

Appellant also asserts that the Bankruptcy Court "did not consider any evidence or argument in rebuttal to the Trustee's objection, despite [the fact] that Debtor's counsel had submitted a brief in opposition to the Trustee's objection well in advance of the hearing." (Dist. ECF No. 12 at 13.) Appellant is correct that Judge Chan did not explicitly state during the hearing that she had reviewed Appellant's Opposition brief, however, this does not on its own indicate that the Bankruptcy Court did not read the brief or consider the arguments therein. Moreover, Appellant's counsel restated essentially the same information regarding bad faith as was provided in the Opposition brief. The transcript states:

> **MS. MASTERS:** Your Honor, the first statement is not exactly true because -- well, I guess it's true in so far as the -- the amount is undervalued because the information that I had at the time was that the property was worth 186,000 -- 182,162. However, when I did the schedule, even that number, okay, would have -- would have been -- would have created a non-exempt equity. And so when I did an update on the information and found that the property was valued higher, as soon as I went to do the schedules, I realized that this can't be a 7. We thought that the amount of the unsecured debt -- I mean, the amount of the mortgage debt was substantially higher than it actually is. So there is non-exempt equity.
>
> And so I filed -- immediately filed a motion to convert the case, but -- as soon as I realized that I told the trustee that I wouldn't be attending the 341 meeting, that I was going to file a motion to convert the case. She said, fine. She said, make sure that it's 100 percent. I did that. It was 100 percent plan. And then the next thing I know, an objection was filed.

(Bankr. ECF No. 82 at 6:20–7:14.) Thus, the Bankruptcy Court heard Ms. Hanaway's argument in support of good faith directly from counsel, including that the initial valuation error was the result of counsel's failure to review the figures provided by Ms. Hanaway, counsel filed the Motion

to Convert immediately after she became aware of the valuation error, counsel informed the Trustee in advance that she would be filing the motion to convert in lieu of attending the § 341(a) Meeting, and Ms. Hanaway's Chapter 13 plan would propose paying the unsecured claims in full. (*See* Dist. ECF No. 12 at 12–13.)

### 2. *The Bankruptcy Court Did Not Clearly Err in Finding Bad Faith*

As noted above, bankruptcy courts assessing whether a motion to convert was filed in good faith consider the totality of the circumstances surrounding the motion, which may include, among others: (1) the nature of the debt; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *In re Piccoli*, 2007 WL 2822001, at *6 (quoting *In re Lilley*, 91 F.3d at 496). While "a debtor's conduct pre-bankruptcy and in chapter 7 before conversion are relevant factors in analyzing a debtor's motive or bad faith in seeking conversion[,] . . . [m]ore important in this good faith analysis is her motivation in seeking conversion." *In re Pakuris*, 262 B.R. 330, 336 (Bankr. E.D. Pa. 2001).

At the motion hearing, Judge Chan did not specifically enumerate her analysis and findings with respect to each *Lilley* factor, but the Bankruptcy Court followed the guidance from *Lilley* in reaching its decision. Judge Chan identified several facts that support a finding of bad faith: (1) the initial significant undervaluation of the property, (2) the inaccurate disclosures regarding the secured claims on the property, (3) Ms. Hanaway's failure to provide any requested documents to the Trustee, and (4) Ms. Hanaway's failure to attend the § 341(a) Meeting prior to filing the Motion to Convert. (Bankr. ECF No. 82 at 8:12–21, 11:3–9.) The Bankruptcy Court explained:

> There's this perception that when a Debtor files a Chapter 7, undervalues the real property, and then tries to quickly convert the case when it looks like the Chapter 7 trustee wants to

sell it, I've had a number of these cases. It's just evidence that the Debtor might be trying to get away with something. And the fact that you decided to not attend a 341 meeting and not give the Chapter 7 Trustee documents further supplements the viewpoint that you were just in it to try to see if you could get it through in a Chapter 7, if you can't, you're going to try and convert it to a Chapter 13, but it smacks of bad faith.

(ECF No. 82 at 8:1–11.) Thus, the Bankruptcy Court's assessment addressed the second, fourth, fifth, sixth, and seventh *Lilley* factors.

The Court finds that the Bankruptcy Court did not clearly err by concluding that Ms. Hanaway filed the Motion to Convert in bad faith. At the motion hearing, Ms. Hanaway's counsel asserted that her client provided the initial valuation figure that counsel inadvertently incorporated into the schedules filed with the Bankruptcy Court. (Bankr. ECF No. 82 at 12:8–18.) Counsel did not provide a plausible reason for why the initial error occurred or why she herself failed to conduct her due diligence in confirming figures before filing them with the Bankruptcy Court. Furthermore, while the Bankruptcy Court did not address it at the hearing, Appellee notes on appeal that Ms. Hanaway's Motion to Convert did not mention the discrepancy in the initial Real Property valuation even though counsel was aware of the issue at the time the Motion was filed. (Dist. ECF No. 13 at 3.) With respect to bankruptcy filings, "[t]he debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." *In re Kasal*, 217 B.R. 727, 734 (Bankr. E.D. Pa. 1998), *aff'd*, *Casey v. Kasal*, 223 B.R. 879 (E.D. Pa. 1998); *see also In re Marrama*, 430 F.3d 474, 482 (1st Cir. 2005), *aff'd*, *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007) ("The bankruptcy court is entitled to demand utmost good faith and honesty from debtors in the preparation of their schedules and statements of affairs."). Given these standards, the Bankruptcy Court had reason to find that the undervaluation of the only significant asset that Ms. Hanaway claimed in her bankruptcy schedules indicated bad faith. Indeed, the Bankruptcy Court explained that "the totality of the

11

circumstances" indicated that Ms. Hanaway was attempting to undercut the value of the Real Property, which "gave [the court] the impression that the Debtor acted in bad faith." (Bankr. ECF No. 82 at 12:19–25.)

The other facts cited by the Bankruptcy Court—Ms. Hanaway's inaccurate disclosures regarding the secured claims on the property, failure to provide the requested documents to the Trustee, and failure to attend the § 341(a) Meeting—also point to bad faith. This Court agrees that Ms. Hanaway's failure to provide creditors with the requisite documents ahead of the § 341(a) Meeting[6] scheduled for June 4, 2025, as well as her last-minute decision not to attend the meeting on the day it was scheduled, further suggested that the debtor was withholding information to the detriment of the creditors. Moreover, the initial filing of schedules with higher secured claims balances than were filed on the Bankruptcy Register also supported a bad faith finding. (*See* Bankr. ECF No. 82 10:18–11:9.)

Based on the above, the Court is not left with a definite and firm conviction that the Bankruptcy Court clearly erred in finding that the Motion to Convert was filed in bad faith. *See In re Piccoli*, 2007 WL 2822001, at *3. Because a court may deny a motion to convert where conversion would be in bad faith, the Bankruptcy Court was not required to assess other factors. *Marrama*, 549 U.S. at 372; *In re Pakuris*, 262 B.R. at 335–36. Therefore, because the Bankruptcy Court's decision to deny Ms. Hanaway's Motion to Convert was not clearly erroneous, the Court did not abuse its discretion in denying the Motion.

---

[6]    The Court notes that the § 341(a) Meeting was subsequently continued two more times at Ms. Hanaway's request, and was eventually held only after the Bankruptcy Court ruled on the Motion to Convert. (Dist. ECF No. 14 at 9; Bankr. ECF No 67.)

### B. Motion Hearing Testimony

Appellant also asserts that the Bankruptcy Court abused its discretion by not hearing testimony from Ms. Hanaway when she was on the hearing call and willing to testify. (Dist. ECF No. 12 at 5.) However, Appellant cites no point in the hearing transcript—and the Court has been unable to identify any instance—where Ms. Hanaway's presence on the call was noted for the Bankruptcy Court. Similarly, the Court identifies no portion of the hearing where counsel requested that Ms. Hanaway be allowed to testify in support of the Motion to Convert. To the extent that Appellant argues that the Bankruptcy Court abused its discretion by ruling on the Motion to Convert without an evidentiary hearing (Dist. ECF No. 12 at 8), the Court notes that a motion for conversion pursuant to § 706(a) does not automatically qualify as a contested matter governed by Bankruptcy Rule 9014.[7] *See* Fed. R. Bankr. P. 1017(f)(1) ("Rule 9014 governs a proceeding to dismiss or suspend a case or to convert it to another chapter--**except under § 706(a)** . . . .") (emphasis added); Fed. R. Bankr. P. 1017 advisory committee's note to 1987 amendment. Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion by not hearing testimony from Ms. Hanaway where that testimony was neither offered nor required.

### V. CONCLUSION

For the reasons set forth above, the Court affirms the Bankruptcy Court's Order of September 4, 2025. The Motion to Stay Pending Appeal (Dist. ECF No. 11) is denied as moot. An appropriate Order follows.

---

[7]    Rule 9014 requires that if a motion subject to the Rule cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken. *See* Fed. R. Bankr. P. 9014 advisory committee's note to 2002 amendment.

**BY THE COURT:**

**/s/ Kelley B. Hodge**

**HODGE, KELLEY B., J.**